Phyllis Kupferstein, Esq. [SBN 108595]
pk@kupfersteinmanuel.com
Cynthia L. Zedalis, Esq. [SBN 118447]
cz@kupfersteinmanuel.com
Kupferstein Manuel LLP
865 South Figueroa Street
Suite 3338
Los Angeles, California 90017
Telephone: (213) 988-7531
Facsimile: (213) 988-7532

Attorneys for Defendant
Harvey Weinstein

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA LOMAN, an individual,<br><br>            Plaintiff,<br><br>  v.<br><br>HARVEY WEINSTEIN, an individual,<br><br>            Defendant. | Case No.:  2:18-cv-7310 CBM (KSx)<br><br>**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:    May 21, 2019<br>Time:    10:00 a.m.<br>Courtroom:  8B |

# TABLE OF CONTENTS

Preliminary Statement ……………………………………………………...  1

Statement of Facts ……………………………………………………………..  2

Argument ……………………………………………………………………  4

I.       STANDARD OF REVIEW ……………………………………………  3

II.      PLAINTIFF'S SEX TRAFFICKING CLAIM IS TIME-BARRED………  4

III.     PLAINTIFF'S SEX TRAFFICKING CLAIM ALSO FAILS
         BECAUSE SHE DOES NOT ALLEGE THAT A
         COMMERCIAL SEX ACT OCCURRED ………………………………  5

         A. The Alleged Facts Do Not Satisfy the "Commercial"
            Component of the Commercial Sex Act Element ………………………..  6

         B. Weinstein's Purported Assault Was Not Actionable
            Under Section 1591(a) in May 2006 ……………………………… 11

IV.      PLAINTIFF'S COMMON LAW CLAIMS ARE ALSO BARRED
         BY THE STATUTE OF LIMITATIONS ……………………………… 12

V.       NO FACTS ARE ALLEGED TO SUPPORT EQUITABLE
         TOLLING OR EQUITABLE ESTOPPEL THEORIES ………………… 13

VI.      PLAINTIFF'S COMMON LAW CLAIMS SHOULD ALSO BE
         DISMISSED BECAUSE THEY ARE NOT SUBJECT TO THE
         ALIEN TORT STATUTE ……………………………………………… 15

VII.     Conclusion ………………………………………………………….. 16

i

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3 *Addison v. State of California*,

4      21 Cal. 3d 313 (1978) ……………………………………………… 14

5 *Alvarez-Machain v. United States*,

6      107 F.3d 696 (9th Cir. 1996) ………………………………………... 13

7 *Ashcroft v. Iqbal*,

8      556 U.S. 662, 129 S. Ct. 1937 (2009) ………………………… 3, 4

9 *Bell Atl. Corp. v. Twombly*,

10      550 U.S. 544, 127 S. Ct. 1955 (2007) ………………………… 3, 4

11 *Cousins v. Lockyer*,

12      568 F.3d 1063 (9th Cir. 2009) ………………………………… 4

13 *Ditullio v. Boehm*,

14      662 F.3d 1091 (9th Cir. 2011) ……………………………….. 9

15 *Gonzales v. Raich*,

16      545 U.S. 1, 125 S. Ct. 2195 (2005) …………………………… 8

17 *Hallstrom v. Tillamook County*,

18      493 U.S. 21, 110 S. Ct. 304 (1989) …………………………… 13

19 *Holmberg v. Armbrecht*,

20      327 U.S. 392, 66 S. Ct. 582 (1946) …………………………… 13

21 *Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.*,

22      2013 U.S. Dist. LEXIS 180463 (W.D. Ark. Dec. 24, 2013) ……………… 8

23 *McDonald v. Antelope Valley Comm'y College*,

24      45 Cal. 4th 88 (2008) ………………………………………… 14

25 *Moss v. U.S. Secret Serv.*,

26      572 F.3d 962 (9th Cir. 2009) …………………………………… 4

27 *Noble v. Weinstein*,

28      335 F. Supp. 3d 504 (S.D.N.Y. 2018) ………………………… 9, 11

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*O'Donnell v. Vencor, Inc.*,
        466 F.3d 1104 (9th Cir. 2006) ………………………………………… 15
*Stoll v. Runyon*,
        165 F.3d 1238 (9th Cir. 1999), as amended (May 22, 1999) …………. 13, 14
*Todd v. United States*,
        2012 U.S. Dist. LEXIS 100692 (W.D. Wash. June 26, 2012) …………… 6
*Turner v. City and Cty. of San Francisco*,
        788 F.3d 1206 (9th Cir. 2015) ………………………………………… 4
*United States v. Campbell*,
        111 F. Supp. 3d 340 (W.D.N.Y. 2015) …………………………………… 7
*United States v. Clark*,
        435 F.3d 1100 (9th Cir. 2006), *cert. denied,* 549 U.S. 1343 (2007) ………. 7
*United States v. Cook*,
        782 F.3d 983 (8th Cir.), *cert. denied*, 136 S. Ct. 262 (2015) ……………… 9
*United States v. Evans*,
        476 F.3d 1176 (11th Cir.), *cert. denied*, 552 U.S. 878 (2007) …………….. 5
*United States v. Gemma*,
        818 F.3d 23 (1st Cir.), *cert. denied,* 137 S. Ct. 410 (2016) ………………. 9
*United States v. Maynes,*
        880 F.3d 110, 114 (4th Cir. 2018) ……………………………………... 11
*United States v. Morrison*,
        529 U.S. 598, 120 S. Ct. 1740 (2000) …………………………………… 7
*United States v. Paris*,
        2007 U.S. Dist. LEXIS 78418 (D. Conn. Oct. 24, 2007) ………………… 7
*United States v. Reed*,
        2017 U.S. Dist. LEXIS 118020 (D.D.C. July 27, 2017) ……………….. 7, 8
*United States v. Tutstone*,
        525 Fed. Appx. 298 (6th Cir. Apr. 30, 2013) ………………………………… 9

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*United States v. Walls,*

     784 F.3d 543 (9th Cir.), *cert. denied*, 136 S. Ct. 226 (2015) ……………… 6

<u>Rules and Statutes</u>

18 U.S.C.

     Section 1591 ……………………………………… 4, 5, 7, 8, 9, 11, 12

     Section 1591(a) ……………………………………… 1, 3, 6, 11, 12

     Section 1591(a)(1) ……………………………………………… 8

     Section 1595 ……………………………………………………… 8

     Section 1595(b)(1) ……………………………………………….... 5

     Section 1595(c) ……………………………………………… 4

     Section 1595(c)(2) ……………………………………………… 5

     Section 1591(e)(3) ……………………………………………… 7

     Section 1591(f)(2) ……………………………………………… 5

     Section 1596 ……………………………………………………… 5

     Section 2423 ……………………………………………………… 8

22 U.S.C.

     Section 7101(b)(1) …………………………………………… 6

     Section 7102(5) ……………………………………………… 6

22 U.S.C.

     Section 1350 ……………………………………………………... 15

Cal. Civ. Proc. Code

     Section 335.1 ……………………………………………… 12

     Section 340 ……………………………………………… 12

Fed. R. Civ. P. 12(b)(6) ……………………………………………… 1, 3, 16

<u>Other Authorities</u>

5 Wright & Miller § 1216 …………………………………………….. 4

iv

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

https://en.wikipedia.org/wiki/2006_Cannes_Film_Festival ……………………….. 2

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Harvey Weinstein ("Weinstein"), through his attorneys Kupferstein Manual LLP, hereby respectfully submits, pursuant to Fed. R. Civ. P. 12(b)(6), this memorandum of law in support of his motion to dismiss Plaintiff's Civil Complaint for Damages (Dkt. 1). For the reasons set forth below, Plaintiff's Complaint should be dismissed in its entirety.

## Preliminary Statement

Plaintiff fails to plead viable claims against Weinstein for an alleged sexual assault that she claims occurred 12 years ago at the Cannes Film Festival in France. Each of her four causes of action—for sex trafficking in violation of 18 U.S.C. Section 1591(a), and for assault, battery, and false imprisonment under the common law—is clearly time-barred and should be dismissed. Plaintiff has pleaded no basis to trigger application of the doctrines of equitable tolling and/or equitable estoppel; thus, the Court should dismiss the Complaint with prejudice and without leave to amend.

Even if Plaintiff's claims were not barred by the statute of limitations, they should nevertheless be dismissed on the merits. First, Plaintiff erroneously attempts to pigeon-hole her stale sexual assault claim into the federal anti-sex trafficking statute. She fails to allege, however, that she was "trafficked" or that she and Weinstein engaged in a "commercial sex act," essential elements of the statute that give rise to a private cause of action. None of the allegations that purportedly support Plaintiff's claim demonstrates that "a thing of value" was exchanged between Plaintiff and Weinstein in the Cannes hotel room. Because the allegations lack these and other critical elements, Plaintiff's federal claim under the sex trafficking statute fails and should be dismissed. Second, because the alleged sexual assault occurred in France, there is no basis for any claim under any state or common law for the torts Plaintiff asserts.

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1

**Statement of Facts**

2    Plaintiff, a citizen and resident of Germany, alleges that she first met

3    Weinstein in 2004 at the Venice Film Festival.   Dkt. 1, ¶ 3. Two years later,

4    Plaintiff alleges that The Weinstein Company ("TWC") flew her to the 59th Cannes

5    Film Festival[1] - which she had already planned to attend - and put her up in a

6    "luxury suite" at a hotel there.   *Id.*, ¶¶ 7-8.   According to Plaintiff, she and

7    Weinstein had "informal encounters" at the festival, and Weinstein "introduced her

8    to a number of prominent members of the film industry near the beginning of the

9    Festival."   *Id.*, ¶¶ 10, 41. Plaintiff alleges Weinstein told her he had "multiple

10   parts" in upcoming TWC films and would like to meet with Plaintiff in his hotel

11   suite—which he referred to as his "office"—to discuss them. *Id.*, ¶¶ 11, 12, 42-44.

12   Plaintiff claims that she met with Weinstein in his hotel suite where he

13   allegedly made sexual advances, which Plaintiff claims she rebuffed. *Id.*, ¶¶ 49-60.

14   Plaintiff also alleges that Weinstein began to kiss and touch her without her

15   consent and then raped her.  *Id.*, ¶¶ 62-66.

16   Plaintiff further alleges that, "[a]t a later date" while in Cannes, Weinstein

17   asked her to meet him again in his suite to discuss scripts.  *Id.*, ¶ 71.  Plaintiff

18   agreed, and she went to the hotel room and was allegedly greeted by Weinstein and

19   a woman.  *Id.*, ¶¶ 74-75.  Plaintiff claims that Weinstein asked if Plaintiff would

20   engage in a "threesome" with him and the woman, and when Plaintiff attempted to

21   leave the suite, Weinstein blocked her exit and told her that his security guards

22   would not allow her to leave.  *Id.*, ¶ 79.  According to Plaintiff, Weinstein

23   demanded that she stay in the suite until she calmed down, which she supposedly

24   did, and then she left the suite after about an hour.  *Id.*, ¶¶ 82-84.  Plaintiff alleges

25   that Weinstein later called her and berated her for what he perceived as her

26   unprofessionalism, and rescinded outstanding invitations for events at the festival.

27

28
[1] The 59th Cannes Film Festival was held May 17-28, 2006.
https://en.wikipedia.org/wiki/2006_Cannes_Film_Festival.

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1    *Id.*, ¶¶ 85-86.

2         Plaintiff alleges she met Weinstein again in 2007 in Los Angeles.  *Id.*, ¶ 88.

3    Plaintiff claims she agreed to meet with Weinstein because she felt that declining

4    to meet with him "would endanger her safety and well-being more than complying

5    with his request."  *Id.*  At the meeting, Plaintiff alleges that Weinstein acted

6    professionally and took a script from Plaintiff, but later that day, TWC allegedly

7    purchased the script and Plaintiff was "fired" from the film.  *Id.*, ¶¶ 89-90.

8    Plaintiff claims she was told by colleagues that Weinstein had unilaterally ordered

9    the firing, and "told at least one producer not to do any business with [Plaintiff] in

10   the future," which Plaintiff considered to be an "open threat" that she not disclose

11   the rape to anyone.  *Id.*, ¶ 91.

12        Plaintiff's Complaint, which was filed on August 20, 2018, sets forth four

13   causes of action for (1) violation of human sex trafficking laws under 18 U.S.C. §

14   1591(a); (2) assault; (3) battery, and (4) false imprisonment. This motion seeks

15   dismissal of all of Plaintiff's claims.

16                                  **Argument**

17   **I.    STANDARD OF REVIEW**

18        The law applicable to the motion is clear.  Federal Rule of Civil Procedure

19   12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter,

20   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.

21   Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Bell Atl. Corp.

22   v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).  In determining the

23   adequacy of a complaint, a court must disregard the complaint's conclusory

24   allegations and legal conclusions, which are not entitled to the assumption of truth,

25   and determine whether the remaining "well-pleaded factual allegations" suggest

26   that the plaintiff has a plausible—as opposed to merely conceivable—claim for

27   relief.  *Id.* at 679.  Claims that do not cross the "line from conceivable to plausible"

28   must be dismissed.  *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).  When the

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

complaint cannot raise a claim of entitlement to relief, "this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1975 (citing 5 Wright & Miller § 1216, at 233-234 (internal citations omitted).

In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City and Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## II.   PLAINTIFF'S SEX TRAFFICKING CLAIM IS TIME-BARRED

Plaintiff's sex trafficking claim under 18 U.S.C. Section 1591 is subject to a ten-year statute of limitations.  Section 1595(c), which sets forth the civil remedies for unlawful sex trafficking, provides:

(c) No action may be maintained under subsection (a) unless it is commenced not later than the later of--

(1)  10 years after the cause of action arose; or

(2)  10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

Here, Plaintiff's cause of action arose in May 2006, when Plaintiff alleges that she was raped by Weinstein at the 59th Cannes Film Festival.  She did not file this civil

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

action until August 20, 2018, more than 12 years later.  Thus, Plaintiff's claim is time-barred.

Further, the statute allows for tolling of the civil claim only "during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim," 18 U.S.C. § 1595(b)(1), or for 10 years after the victim reaches 18 years of age, "if the victim was a minor at the time of the alleged offense."  *Id.*, § 1595(c)(2).  Plaintiff has not alleged that the alleged rape was subject to a criminal action or that she was under 18 years of age in May 2006 when the assault occurred.  Therefore, Plaintiff's sex trafficking claim is time-barred.

## III.   PLAINTIFF'S SEX TRAFFICKING CLAIM ALSO FAILS BECAUSE SHE DOES NOT ALLEGE THAT EITHER SEX TRAFFICKING OR A COMMERCIAL SEX ACT OCCURRED

Even assuming, for the sake of argument, that Plaintiff's first cause of action for violation of the federal sex trafficking statute is not time-barred, Plaintiff's claim nevertheless fails.  Plaintiff, who alleges a sexual encounter with Weinstein while they were in a hotel room in Cannes, France, seeks civil liability against Weinstein pursuant to a federal statute that criminalizes sex trafficking affecting interstate and intrastate commerce.[2]  That federal statute, codified at 18 U.S.C. § 1591, is "part of a comprehensive regulatory scheme" that "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain."  *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir.), *cert. denied*, 552 U.S. 878 (2007).

The legislation was enacted because "Congress recognized that human trafficking, particularly of women and children in the sex industry 'is a modern

---

[2]  Although the acts complained of occurred in France, courts have applied extraterritorial jurisdiction to claims under Section 1591 when the defendant is a national of the United States.  *See* 18 U.S.C. § 1596.

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

form of slavery, and it is the largest manifestation of slavery today.'" *United States v. Walls,* 784 F.3d 543, 548 (9th Cir.), *cert. denied*, 136 S. Ct. 226 (2015) (quoting 22 U.S.C. § 7101(b)(1)).  Thus, Congress did not intend that the sex trafficking statute apply in this case in which Plaintiff alleges a single, non-consensual sex act that was not connected to a sex trafficking scheme.  Indeed, the legislative history surrounding the statute makes clear that Congress was concerned that victims were being lured "away from family and friends, religious institutions, and other sources of protection and support.  22 U.S.C. § 7102(5).  *See Todd v. United States*, 2012 U.S. Dist. LEXIS 100692, at *18 (W.D. Wash. June 26, 2012) (noting that the Act relates to commercial sex acts that are necessarily economic in nature and is distinguishable from laws governing gender-motivated crimes).

Even a cursory review of Plaintiff's Complaint leads to the conclusion, as discussed more fully below, that Plaintiff has failed to plead a violation of Section 1591 because the allegations do not satisfy the trafficking or commercial sex act elements of the claim.  There are no allegations that Weinstein trafficked Plaintiff for commercial gain.  There are also no allegations that he forced her to his hotel room under false pretenses. It is in this context that the Court should consider the viability of Plaintiff's claim.

A.  **The Alleged Facts Do Not Satisfy the "Commercial" Component of the Commercial Sex Act Element**

In May 2006, at the time of the alleged sexual assault complained of in the Complaint, Section § 1591(a) provided in relevant part:

(a) Whoever knowingly –

 (1) In or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) knowing, … that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination or such means will be used to cause the person to engage in a commercial sex act … shall be punished as provided in subsection (b).

Section 1591 was designed to target organized sex-trafficking rings or ventures that profit from illicit sex trade. "[I]n the most sterile terms, the statute covers the situation where a U.S. citizen engages in a commercial transaction through which money is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006), *cert. denied,* 549 U.S. 1343 (2007). "The term 'commercial sex act' means any sex act, or account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

Plaintiff does not allege unlawful commercial and economic activity as proscribed by the sex trafficking statement she sues under, but rather a purported sexual assault. *Cf. United States v. Morrison*, 529 U.S. 598, 613, 120 S. Ct. 1740, 1751 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity."). She fails to allege that a "commercial transaction through which money is exchanged for sex acts" occurred in the hotel room. *Clark*, supra. Simply, while Plaintiff alleges in the Complaint that Weinstein raped her, she does not allege that money or an item of value was exchanged for the purported sex act, which is fatal to sustain a claim under Section 1591.

To constitute a commercial sex act, the transaction must be economic in nature. *United States v. Campbell*, 111 F. Supp. 3d 340, 345 (W.D.N.Y. 2015) (citing *United States v. Paris*, 2007 U.S. Dist. LEXIS 78418, *1 (D. Conn. Oct. 24, 2007)). In the context of the definition of "commercial sex acts" in Section 1591(f)(2), the court in *United States v. Reed*, 2017 U.S. Dist. LEXIS 118020, *33

7

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

(D.D.C. July 27, 2017), cited the Supreme Court's explanation of "economics" in *Gonzales v. Raich*, 545 U.S. 1, 25, 125 S. Ct. 2195, 2210 (2005), in which the Court found that "'Economics' refers to the production, distribution, and consumption of commodities." The *Reed* court elaborated with respect to an analogous statute criminalizing the transportation of minors. 18 U.S.C. § 2423:

> … Congress made factual findings that there exists a global marketplace for sexual exploitation of children, in which children are trafficked across borders for the purpose of prostitution, pornography productions, and other forms of sexual abuse, and in which Americans are participating as customers. … In that marketplace, the act of engaging in sexual intercourse with a child is the "commodity" for sale. In its simplest terms, Section 2423(c) prohibits the exchange of a thing of value for a particular commodity—a quintessential regulation of economic activity.

*Reed,* 2017 U.S. Dist. LEXIS 118020, *34 (emphasis added).

The case of *Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 U.S. Dist. LEXIS 180463 (W.D. Ark. Dec. 24, 2013), which involved evangelist Tony Alamo, is instructive. In *Kolbeck*, the defendants were entitled to summary judgment on the plaintiffs' Section 1595 claim because the plaintiffs failed to show that their "living expenses were paid as some sort of quid pro quo for the sex acts that occurred with Alamo." As the court noted, the plaintiffs failed "to establish that they deliberately accepted anything of value (*i.e.*, payment of living expenses) in exchange for having sex with Alamo." *Id.*, *53 n. 16 (emphasis in original). Likewise, the fact that defendant had their expenses paid by Alamo's ministry did not demonstrate that they "were compensated 'on account of' the sex acts." As the court held, "[i]n sum, Plaintiffs offer no evidence of a causal relationship between the sex acts and the payment of expenses," as required to establish a violation of 18 U.S.C. § 1591. *Id.*

In this case, there are no allegations of a quid pro quo between Weinstein

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

and Plaintiff in which anything of value was given or received by either party for sex.[3]  Although Plaintiff alleges that Weinstein invited Plaintiff to his hotel room to discuss potential roles, Plaintiff does not allege that business was discussed in the room.  Throughout the alleged encounter in Weinstein's suite, Plaintiff claims that Weinstein discussed her body, teasingly asked her if she was a man, insisted on giving her a massage, kissed and touched Plaintiff, and then proceeded to rape her. There are no allegations that Weinstein made any promise of a commercial nature—such as promising Plaintiff a role in an upcoming film or the payment of money—if Plaintiff consented to having sex with him.  That Weinstein purportedly made sexual advances and then allegedly proceeded to sexually assault Plaintiff does not support a civil claim for human sex trafficking under federal law.

Weinstein anticipates that Plaintiff will attempt to compare her allegations to those alleged by the plaintiff in *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018).  In *Noble,* the court denied Weinstein's motion to dismiss the plaintiff's sex trafficking claim, finding that Plaintiff's allegations of fraudulent promises by Weinstein to consider the plaintiff for a role in exchange for sex were sufficient to establish the requisite quid pro quo under Section 1591(a). (Weinstein's motion to certify the opinion to the Second Circuit Court of Appeals is pending.)[4]  What is important here is to consider the facts not in the context of a sexual assault, but

---

[3] The types of acts that courts have found constituted "commercial sex acts" under Section 1591 include advertising the availability of a minor for sex on the internet and transporting the minor to different states to engage in the sexual activity (*United States v. Gemma*, 818 F.3d 23 (1st Cir.), *cert. denied,* 137 S. Ct. 410 (2016)); having the victim sign a "sex slavery contract" and advertising torture sessions of the victim online (*United States v. Cook*, 782 F.3d 983 (8th Cir.), *cert. denied*, 136 S. Ct. 262 (2015)); "selling" the victim for $300 to have sex with a madam's customers (*United States v. Tutstone*, 525 Fed. Appx. 298 (6th Cir. Apr. 30, 2013)); and providing crack cocaine to the victim on a daily basis in exchange for sex (*Ditullio v. Boehm*, 662 F.3d 1091, 1095 (9th Cir. 2011)).

[4] Weinstein's motion to certify was argued on February 20, 2019.  Judge Sweet, who presided over the case, passed away on March 24, 2019 before issuing an opinion.

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1   whether Plaintiff has plausibly asserted a claim for sex trafficking.

2   Here, unlike in *Noble*, Plaintiff concedes that there was nothing
3   "suspicious" about Weinstein's purported request that she accompany him to his
4   hotel room to discuss business because she "knew that film executives often used
5   suites at prestigious hostels as offices due to lack of a more formal space." Dkt. 1,
6   ¶¶ 12, 43. Plaintiff also concedes that the day before she went to his room,
7   Weinstein had purportedly "introduced [her] to many of the most notable figures
8   attending the Festival." *Id.*, ¶ 47. Plaintiff also admits that, although Weinstein
9   allegedly made sexual advances in the hotel room, "she knew from her years of
10  modeling work that many men would make inappropriate sexual comments in
11  work settings," and the advances would stop once discouraged. *Id.*, ¶ 55. Plaintiff
12  also alleges that immediately following the alleged rape, Weinstein told Plaintiff
13  she could sit next to the director of one of his films that was premiering the next
14  day. *Id.*, ¶ 70.

15  Although the *Noble* court found that the plaintiff had alleged a commercial
16  sex act occurred because "[f]or an aspiring actress, meeting a world-renowned film
17  producer carries value, in and of itself," 335 F. Supp. 3d at 26, it also stated that its
18  holding is based on "little to no prior authority" and requires statutory construction
19  in "uncharted waters." *Id.* at 24. Here, unlike in *Noble*, there were no direct
20  promises by Weinstein to cast Plaintiff in any role. Plaintiff alleges only that
21  Weinstein asked her to his hotel room on two occasions to discuss scripts.
22  Plaintiff's allegations that Weinstein raped her are not based on any purported false
23  promise by Weinstein to advance her career or cast her in a particular role. In the
24  alleged first hotel room incident, Plaintiff describes Weinstein's multiple attempts
25  to obtain consensual sexual activity from Plaintiff but that he eventually proceeded
26  to rape her despite her refusals. Plaintiff does not allege at any time during this
27  encounter that Weinstein promised anything of value to Plaintiff if she had sex
28  with him. In addition, in their alleged second meeting in the Cannes hotel room,

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1   Plaintiff was aware immediately that Weinstein wanted to engage in sexual activity
2   with Plaintiff and another woman who was also present in the room.   Again,
3   Plaintiff does not allege any promises by Weinstein that sex was contingent on a
4   role, future work, or career advancement.

5   The *Noble* court stated that "[w]hether the Amended Complaint plausibly
6   alleges a causal relationship between the promises [Weinstein] made and the force
7   he employed on the one hand, and the sex act's occurrence on the other, is a crucial
8   inquiry." 335 F. Supp. 3d at 21.  The court explained:

> Statements made incidental to the sex act—made for a reason other than to
> bring about the act—are not enough. Tied up in this inquiry is whether the
> statements made by Defendant were material—that is, important enough to a
> reasonable plaintiff to be relied upon.  *United States v. Maynes,* 880 F.3d
> 110, 114 (4th Cir. 2018) ("[F]or any fraud to be relevant to the question of
> guilt [under Section 1591], it must have been fraud that '*would be used to*
> *cause* that person to engage in a commercial sex act.'") (emphasis added).

16   *Id.*  As shown above, Plaintiff alleges that (1) there was nothing "suspicious" about
17   meeting a film producer in a hotel room; (2) Weinstein had already introduced her
18   to important people at the film festival as promised; and (3) she knew from prior
19   experience that men would make inappropriate sexual comments in a work
20   setting." Plaintiff does not allege that Weinstein made any false promises to her
21   when he made the sexual advances she alleges occurred in the hotel room.
22   Accordingly, because Plaintiff does not allege the commercial sex act component
23   of a Section 1591(a) claim, her first cause of action fails.

**B.** **Weinstein's Purported Assault Was Not Actionable Under Section
     1591(a) in May 2006**

26   The Complaint also fails to allege sufficient facts to trigger application of
27   the version of Section 1591 in effect in May 2006, when Plaintiff alleges the sexual
28   assault occurred.  At that time, Section 1591(a)(1) subjected an individual who

11

knowingly "recruits, entices, harbors, transports, provides, or obtains by any means a person" to criminal and civil liability.  The current version of the statute, amended in 2015, added "advertises, maintains, patronizes, or solicits" as proscribed conduct.  Congress amended the statute to include "patronizes" and "solicits" because there was some "confusion" as to whether the statute applied to persons "who purchased illegal sex acts with trafficking victims" and Congress wanted to make clear that the purchase of sexual acts form human trafficking victims is subject to Section 1591.

Here, the facts alleged in the Complaint do not cast Weinstein as one who solicited a commercial sex act from Plaintiff. According to the Complaint, Weinstein invited Plaintiff to his hotel room to discuss business, but once there, he began to make sexual advances toward Plaintiff. There is no allegation, however, that Weinstein "purchased" Plaintiff and/or that she was an illegal sex worker or human trafficking victim, whom the statute is designed to protect, at the time she willingly went to Weinstein's hotel room. Plaintiff implicitly requests this Court to interpret the sex trafficking statute to include an alleged sexual assault that lacks a commercial component. Certainly the statute was not drafted for such broad application and should not be so construed here.

## IV.   PLAINTIFF'S COMMON LAW CLAIMS ARE ALSO BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff asserts three common law claims arising from the alleged 2006 rape in the hotel room in Cannes: (1) assault (second cause of action); (2) battery (third cause of action); and (3) false imprisonment (fourth cause of action).  Under California law, Plaintiff's assault and battery claims are subject to a two-year statute of limitations. Cal. Civ. Proc. Code § 335.1. Plaintiff's false imprisonment claim is subject to a one-year statute of limitations.  Cal. Civ. Proc. Code § 340. Therefore, each of Plaintiff's common law claims are time-barred under California law because Plaintiff did not file this civil action until August 20, 2018—more

than twelve years after her alleged rape in Cannes.  As discussed below, there are no allegations supporting equitable tolling or equitable estoppel.

## V.   NO FACTS ARE ALLEGED TO SUPPORT EQUITABLE TOLLING OR EQUITABLE ESTOPPEL THEORIES

Plaintiff does not allege any facts that form a basis for tolling the statutes of limitations. In paragraph 18 of her Complaint, she offers the following excuse for her late-filed pleading:

> Fearful both that no one would believe her and the *potential* retaliation from such a powerful figure, Loman stayed silent.  It was only upon the late 2017 revelation of the scope of Weinstein's wrongful actions – to both Loman and the general public – that Loman felt safe coming forward to seek redress for Weinstein's rape of her, which she began pursuing immediately.

Dkt. 1, ¶ 18 (emphasis added).  That Plaintiff thought "no one would believe her" and there was the "potential" Weinstein would retaliate against her, and did not feel "safe" filing suit until other women came forward with their alleged claims against Weinstein, are insufficient reasons for Plaintiff's failure to timely file suit.

The running of a statute of limitations under a federal statute is subject to equitable tolling.  *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S. Ct. 582 (1946); *see also Hallstrom v. Tillamook County,* 493 U.S. 21, 27, 110 S. Ct. 304 (1989) ("The running of … statutes [of limitations] is traditionally subject to equitable tolling").  Equitable tolling applies "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time."  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), as amended (May 22, 1999) (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).  In *Stoll*, the Ninth Circuit found that equitable tolling applied to an untimely Title VII claim where the injured party had become "severely

psychiatrically impaired" as a result of sexual harassment, rape, and abuse by supervisors and co-workers.  165 F.3d at 1243.  The equitable tolling principles enunciated in *Stoll* do not apply to Plaintiff's state law claims because, under California law, the "judicially created equitable tolling rule … require[s] a showing of three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff."  *McDonald v. Antelope Valley Comm'y College*, 45 Cal. 4th 88, 102 (2008) (citing *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978)).

In this case, Plaintiff has not alleged facts sufficient to equitably toll either her federal or state law claims.  She does not allege that there were extraordinary circumstances beyond her control that made it impossible to file her claims on time.  She does not allege that she was either mentally or physically incapacitated for the 12 years following the alleged 2006 sexual assault, or that Weinstein prevented her from filing suit.  Rather, Plaintiff states only that she did not sue because she did not think anyone would believe her, and—importantly—that there was the alleged "potential" Weinstein would retaliate against her.

First, the prejudice to Weinstein far outweighs an excuse Plaintiff offers for her late filing.  As stated above, Plaintiff alleges various witnesses to her encounters with Weinstein, such as important filmmakers to whom she was introduced; an assistant who accompanied her and Weinstein to the private elevator leading to her suite; security guards who lined a hallway; and an unnamed woman in Weinstein's room the second time Plaintiff went to his suite.  Because more than 12 years have passed since these events, Weinstein will undoubtedly be unable to ascertain the identity of these witnesses in order to defend himself against Plaintiff's claims.  That Plaintiff chose to sit on her rights and only filed suit because other women have done so is not a sufficient to reason to toll her claims. Her delay is not excusable.

Second, Plaintiff has failed to allege sufficient facts to equitably estop

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Weinstein from claiming the statutes of limitations bar her claims.  The doctrine of equitable estoppel focuses on the defendant's actions in preventing a plaintiff from filing suit.  *O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006).  That Plaintiff believed Weinstein would "potentially" retaliate against her if she timely filed her claims does not describe wrongful conduct on Weinstein's part.  In fact, Plaintiff has not pleaded a single fact in which Weinstein threatened Plaintiff if she filed suit.  According to Plaintiff, when she met with Weinstein in 2007 in Los Angeles, he "behaved relatively professionally and calmly," even though, Plaintiff alleges, he subsequently had her dismissed from a role.  Dkt. 1, ¶¶ 89-91.  But Plaintiff does not allege that Weinstein in any manner threatened Plaintiff not to file suit.

Therefore, Plaintiff cannot rely on the doctrines of equitable tolling or equitable estoppel to excuse her filing of these stale claim.

## VI.   PLAINTIFF'S COMMON LAW CLAIMS SHOULD ALSO BE DISMISSED BECAUSE THEY ARE NOT SUBJECT TO THE ALIEN TORT STATUTE

Even assuming Plaintiff's common law claims for assault, battery, and false imprisonment are not time-barred under California law, they should nevertheless be dismissed.  Plaintiff alleges that she is a "citizen and resident of Germany" (Dkt. 1, ¶ 24) and that the alleged assault, battery, and false imprisonment occurred in Cannes, France.  Thus, Plaintiff can only assert claims under the federal common law that violate international law pursuant to the Alien Tort Statute, 28 U.S.C. § 1350, which provides that "the district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  In her Complaint, Plaintiff does not allege that Weinstein violated a "law of nations or a treaty of the United States."  Thus, Plaintiff's non-statutory claims do not belong in this court.

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

### Conclusion

For the reasons set forth above, Defendant Harvey Weinstein respectfully requests the Court grant his motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety and with prejudice.

DATED:  April 1, 2019

KUPFERSTEIN MANUEL LLP

*/s/ Phyllis Kupferstein*

Phyllis Kupferstein
pk@kupfersteinmanuel.com
Cynthia L. Zedalis
cz@kupfersteinmanuel.com

Attorneys for Defendant
Harvey Weinstein

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**